UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALECIA PETRA LAMONT,<br><br>          Plaintiff,<br><br>     v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>          Defendants. | Case No. 2:16-cv-01418-BHS-TLF<br><br>REPORT AND RECOMMENDATION<br><br>Noted for July 14, 2017 |

Alecia Petra Lamont has brought this matter for judicial review of the Commissioner of Social Security's denial of her application supplemental security income (SSI) benefits. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth below, the undersigned recommends that the Court reverse the Commissioner of Social Security's decision to deny benefits and remand this matter for further administrative proceedings on the issue of Ms. Lamont's migraine headaches.

FACTUAL AND PROCEDURAL HISTORY

On March 30, 2012, plaintiff filed an application for SSI benefits, alleging that she became disabled beginning June 1, 2006. Dkt. 10, Administrative Record (AR) 19. That application was denied on initial administrative review and on reconsideration. *Id.* A hearing was held in June 2013 before an administrative law judge (ALJ), at which plaintiff appeared and

REPORT AND RECOMMENDATION - 1

1  testified. AR 44-66. The ALJ found in a written decision that Ms. Lamont was not disabled. AR
2  19-39.
3      On review, this court reversed and remanded that ALJ's decision. *See* AR 707-19.
4  Another hearing was held in December 2015 before a different ALJ. AR 623-59. Ms. Lamont
5  testified, as did a vocational expert. In a written decision on December 28, 2015, the ALJ found
6  that Ms. Lamont could perform jobs existing in significant numbers in the national economy and
7  therefore was not disabled. AR 601-16. The Appeals Council denied Ms. Lamont's request for
8  review on July 25, 2016, making the ALJ's decision the final decision of the Commissioner. AR
9  579-84. Ms. Lamont appealed that decision in a complaint filed with this Court on September 6,
10 2016. Dkt. 3; 20 C.F.R. § 416.1481.
11     Ms. Lamont seeks reversal of the ALJ's decision and remand for further administrative
12 proceedings, arguing the ALJ erred:

   (1)   in determining Ms. Lamont's severe impairments;

   (2)   in discounting her credibility;

   (3)   in assessing her residual functional capacity; and

   (4)   in finding she could perform other jobs existing in significant numbers
         in the national economy.

For the reasons set forth below, the Court finds that the ALJ erred in failing to justify his rejection of Ms. Lamont's testimony about her migraines and failing to include corresponding limitations in the RFC, and thus in finding plaintiff to be disabled. Accordingly, the Court finds that the decision to deny benefits should be reversed and that this matter should be remanded for further administrative proceedings.

REPORT AND RECOMMENDATION - 2

DISCUSSION

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See* 20 C.F.R. § 416.920. At issue here is the ALJ's determination at step two that Ms. Lamont's obstructive sleep apnea, chronic fatigue, and asthma are not severe impairments and his determination that Ms. Lamont's testimony regarding the severity of her impairments was not entirely credible, and his resulting assessment of Ms. Lamont's RFC and conclusion that Ms. Lamont could perform jobs in the national economy.

This Court affirms an ALJ's determination that a claimant is not disabled if the ALJ applied "proper legal standards" in weighing the evidence and making the determination and if "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F. Supp. 522, 525 (E.D. Wash. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193. This requires "more than a scintilla of evidence" but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

This Court will thus uphold the ALJ's findings if "inferences reasonably drawn from the record" support them. *Batson*, 359 F.3d at 1193. If more than one rational interpretation can be drawn from the evidence, then this Court must uphold the ALJ's interpretation. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

I. <u>The ALJ's Step Two Determination</u>

At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii); Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856, at *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856, at *3; *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). A claimant must prove that her "impairments or their symptoms affect her ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry, however, is a *de minimis* screening device used to dispose of groundless claims. *Smolen*, 80 F.3d at 1290.

Ms. Lamont asserts that the ALJ failed to properly evaluate the evidence that three conditions—asthma, obstructive sleep apnea (OSA), and chronic fatigue syndrome (CFS)—affect her ability to work. The Court disagrees.

First, the ALJ appeared to make a scrivener's error in finding asthma to be non-severe. AR 604. In the heading to his step-two discussion, the ALJ did list asthma among the impairments he found severe. AR 603. Moreover, Ms. Lamont concedes that any error in not finding asthma severe was harmless because asthma would not limit Ms. Lamont in performing the jobs that the ALJ ultimately found she could perform at step five. AR 615-16; Dkt. 14, pp. 3-4. The Court accepts this concession.

Second, the ALJ applied the proper legal standards in finding Ms. Lamont's OSA to be

REPORT AND RECOMMENDATION - 4

1   non-severe, and the record supports that finding. The ALJ found that despite Ms. Lamont's

2   diagnosis of moderate sleep apnea and her testimony that she spent most of her day sleeping, the

3   record indicates "that her sleep issues cause no more than minimal limitation in her ability to

4   perform basic work activities." AR 604; *see* AR 54, 840-41.

5         The ALJ reasoned that while Ms. Lamont reported trouble sleeping to Dr. Peter Weir, Dr.

6   Weir noted that she appeared alert and did not appear tired. AR 604, 975. The ALJ also noted

7   that Dr. Weir did not make a sleep-related diagnosis. AR 604; see AR 972-76. And the ALJ

8   found that Ms. Lamont's refusal to use the prescribed CPAP machine and the lack of sleep

9   medications prescribed to her called her credibility on the topic into question. AR 604.

10        The ALJ applied the correct standard in finding that Ms. Lamont's OSA was not severe,

11  and substantial evidence supports that finding. AR 604; *see Smolen*, 80 F.3d at 1290. Although

12  Ms. Lamont's providers diagnosed her with OSA based on a sleep study, the record contains no

13  evidence that the condition was severe enough to affect Ms. Lamont's ability to work. *See* AR

14  312. Dr. Weir, Dr. Richard McClenahan, and Dr. Evelyn Oxenford observed Ms. Lamont to be

15  alert and awake. *See* AR 329, 404, 975.

16        Ms. Lamont challenges the ALJ's reliance on Dr. Weir's observation that she appeared

17  alert and not tired and his failure to make a sleep-related diagnosis, asserting that Dr. Weir did

18  not review Ms. Lamont's complete medical record and made errors in noting her medical history

19  and medications. Dkt. 12, pp. 6-7; AR 972-73; *see* AR 949. But neither the ALJ nor the

20  Commissioner dispute that Ms. Lamont had trouble sleeping; the issue at step two is how her

21  condition affected her ability to work. Moreover, a failure by Dr. Weir to review Ms. Lamont's

22  entire medical history would not affect his ability to observe her present state during the exam.

23  Thus, the ALJ did not err in citing Dr. Weir's exam findings. *See* AR 604.

24

25

Apart from references to the sleep study, the evidence regarding OSA consists entirely of self-reported symptoms, as Ms. Lamont reported difficulty sleeping in her doctor visits and up to the time of her second hearing. AR 312 (noting struggles with fatigue), 324 (noting OSA may be source of fatigue), 417 (need for sleep study), 972 (noting history). Even in her subjective reports, Ms. Lamont did not state that OSA significantly limited her abilities.

Ms. Lamont also testified about her OSA at both hearings. In 2013, she testified that she had undergone a sleep study for OSA and had tried a continuous positive airway pressure (CPAP) mask but could not tolerate wearing it. AR 55. She testified that she woke up three to four times per night, usually for 30-60 minutes. AR 55-56. And she testified that she does not take medications for sleep, but only natural supplements on occasion. AR 56. She offered substantially similar testimony at her second hearing. AR 636, 646-48. She did not testify at either hearing that her inability to obtain restorative sleep would limit her ability to hold a job and work consistently. See AR 47-64, 626-54. While she testified at her first hearing that her back spasms limited her ability to do chores, AR 50, that her migraines limited her to putting laundry into a machine and sitting down to fold it, AR 59-60, and that her anxiety made her uncomfortable in public, she did not attribute functional limitations to her sleep troubles. AR 63-50, 59-60, 64.

Ms. Lamont presented no medical opinion evidence, either, to show that OSA limited her. In December 2014, Ms. Lamont sought disability paperwork from Dr. McClenahan, telling him that she could not work because of several impairments, including CFS. Dr. McClenahan wrote, "I have known this patient for years, struggling with the above issues and can support her need for this paperwork though cannot justify complete disability." AR 859. The doctor in the best position to evaluate Ms. Lamont for disability thus declined to offer an opinion supporting

her claim.

Third, the ALJ applied the proper legal standards in finding Ms. Lamont's asserted CFS to be non-severe, and the record supports that finding, as well.

Ms. Lamont is correct that her medical record contains numerous reports of fatigue. As noted above, Ms. Lamont reported her fatigue and sleeping problems in many of her doctor visits. AR 312, 324, 417, 972. As with OSA, Ms. Lamont testified to symptoms of fatigue: At her first hearing, she said that she slept "maybe three, maybe four times a day," though she said soon after that she napped "[i]f I absolutely have to," which happened three to four times per week. AR 49, 54. Her naps lasted 30-90 minutes. AR 54. She offered substantially similar testimony at her second hearing. She added that she sometimes had to sleep 16-20 hours the day after doing errands, but she attributed this to physical pain and anxiety about leaving the house. AR 636.[1] As with her OSA, Ms. Lamont did not testify that her daytime fatigue would limit her ability to hold a job and work consistently. See AR 47-64, 607-08, 626-54.

Ms. Lamont points to one opinion that diagnosed her with CFS, a 2012 disability documentation form that Dr. McClenahan filled out. AR 265-67. Dr. McClenahan listed CFS as an "issue[ ] that require[s] special accommodations or considerations." The ALJ did not discuss this diagnosis. Nonetheless, if the ALJ erred, such an error was harmless, as no reasonable ALJ could have found Ms. Lamont disabled based on Dr. McClenahan's form. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006); *Abela v. Sec'y of Health & Human Servs.*, 960 F.2d 152 (9th Cir. 1992). There are multiple reasons a reasonable ALJ would discount Dr.

---

[1] At her second hearing, Ms. Lamont testified that she napped two to three times per week, for 30-60 minutes on average, because she gets tired during the day. AR 636. She testified that she continued to have sleep and fatigue problems and that she still could not tolerate the CPAP machine. AR 646-47. She said she does not feel in the morning that she's had a restorative sleep. AR 647. She said she takes natural supplements like melatonin and valerian root, with mixed results. AR 648.

REPORT AND RECOMMENDATION - 7

McClenahan's 2012 opinion: he made it on a fill-in-the-box form and provided no explanation; he made it early on in treating Ms. Lamont, did not repeat it, and contradicted it in his later notes; and his notes on the form are internally contradictory: though he checked "yes" to indicate the diagnosis was "supported by testing, lab reports, etc.," he wrote in, "This is supported by thorough work up & <u>negative</u> & normal labs. No abnl labs to submit." AR 265 (emphasis in original); *see* AR 859; *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (holding ALJ "may 'permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions'" [quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)]).

Moreover, under the Commissioner's guidelines, "medical signs or laboratory findings" must accompany a CFS diagnosis for a claimant's CFS to be a medically determinable impairment. SSR 14-1p at *2, *4. Ms. Lamont points to no such objective medical evidence here. As noted above with respect to OSA, Ms. Lamont's treating physician looked for and failed to find a cause of her reported fatigue, but he attributed it mainly to obesity. AR 881. He also declined to state, at Ms. Lamont's request, that she was disabled due in part to fatigue. AR 859.

In finding Ms. Lamont's fatigue to be non-severe, the ALJ cited several negative tests, including a "negative consult with endocrine," "negative labs," and a "negative ACTH stim test." AR 604; *see* AR 882. Ms. Lamont cites this Court's previous remand order, where this Court observed regarding a prior ALJ decision, "It is not clear what 'exam findings' the ALJ expected to see regarding [Ms. Lamont]'s fatigue." AR 711. To the extent the ALJ repeated the prior ALJ's error of finding fatigue to be non-severe based on the absence of positive test results, the ALJ erred.

Nonetheless, such an error would also be harmless, because the burden is on Lamont at step two. *See Edlund*, 253 F.3d at 1159-60. The absence of a test that affirmatively demonstrates

REPORT AND RECOMMENDATION - 8

that Ms. Lamont does not suffer from CFS does not satisfy her burden to show that CFS *did* affect "her ability to perform basic work activities." *See id.* She failed to show such an effect here, as the record supports the ALJ's finding that "[t]here is no objective evidence to support chronic fatigue as severe." AR 604. Ms. Lamont's long-time primary care physician, Dr. McClenahan, associated her fatigue and malaise with obesity, noting its "[e]tiology [was] not clear" and that "[e]xhaustive work up over the y[ea]rs" was unrevealing. AR 428, 881.

In short, because Ms. Lamont showed no evidence that her sleep apnea, her chronic fatigue, or a combination of the two had "more than a minimal" effect on her ability to work, the ALJ did not err at step two. *See Smolen*, 80 F.3d at 1290 (quoting SSR 85-28).

II. The ALJ's Assessment of Ms. Lamont's Credibility

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as substantial evidence supports that determination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

An ALJ may not reject a claimant's subjective complaints solely because objective medical evidence does not support them. *See Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995). Rather, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). To find "allegations of severity to be not credible," the ALJ "must specifically make findings which support this conclusion." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v.*

*Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. A determination that a claimant's complaints are not consistent with objective medical observations can satisfy the clear and convincing requirement. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen*, 80 F.3d at 1284. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *Id.* And the ALJ must consider the effectiveness of medication and other forms of treatment when evaluating credibility. 20 C.F.R. § 416.929(c)(3)(iv)-(v); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating pain" alleged).

Here, the ALJ found that Ms. Lamont's statements about "the intensity, persistence and limiting effects of" her symptoms in general were "not entirely credible." AR 608. Ms. Lamont challenges that determination as it relates to two asserted impairments in particular: fatigue and migraines.

With respect to fatigue, any error in discrediting Lamont's testimony was harmless. As noted above, Lamont failed to provide evidence—including her own testimony—that chronic fatigue syndrome significantly affected her ability to work, and so the ALJ properly declined to find that condition severe at step two.

With respect to migraines—which the ALJ did find to be a severe impairment—Ms.

REPORT AND RECOMMENDATION - 10

1   Lamont testified that she suffered severe headaches lasting two to seven days once every month.
2   AR 603, 649-51. She testified that she took sumatriptan (generic Imitrex) and that the medication
3   worked 8 times out of 10 but some pain often remained. AR 649-51. She testified that in the first
4   few hours of a migraine she could not do much, needing to avoid light, loud noises, and
5   movement. AR 651. She testified that a second pill was usually necessary. AR 652. After she
6   took it, she said, the pain would be gone but her functioning was still limited because her head
7   remained "hazy." AR 652-53. Summarizing this testimony, the ALJ wrote that Lamont "usually
8   only has one serious migraine per month and she takes medication that generally relieves her
9   pain." AR 608.

10       In explaining his decision to generally discredit Ms. Lamont's symptom testimony, the
11  ALJ observed that "[i]n November 2014, Dr. McClenahan indicated that [Ms. Lamont's]
12  common migraine was well controlled with Imitrex for what he assessed as clearly menstrual
13  related headache [sic]." AR 610; see AR 861. Beyond this, he did not discuss Ms. Lamont's
14  migraine testimony.

15       To discredit Ms. Lamont's statements about the severity of her migraines, the ALJ
16  needed to "state which [such] testimony is not credible" and make findings supporting that
17  conclusion, the record must support those findings, and those findings "must be "sufficiently
18  specific to allow" the Court to conclude that the ALJ "rejected the claimant's testimony on
19  permissible grounds" and not arbitrarily. *Dodrill*, 12 F.3d at 918; *Bunnell*, 947 F.2d at 345.

20       Instead, the ALJ mentioned a single note by Dr. McClenahan stating that medicine
21  seemed to be effective in controlling the migraines. AR 610. The ALJ made no findings based on
22  that note—or anything else in the record—that would enable this Court to conclude that the ALJ
23  had permissible, non-arbitrary reasons to reject Ms. Lamont's testimony about the debilitating
24
25

REPORT AND RECOMMENDATION - 11

effects of her headaches. To the extent the ALJ rejected Ms. Lamont's reports and testimony concerning the limiting effects of her migraine headaches, the lack of any discussion leaves the Court to guess as to his actual reasons for doing so. *See Bunnell*, 947 F.2d at 345.

The ALJ also offered, as a reason to discredit Ms. Lamont's testimony in general, that her "activities of daily living are inconsistent with disability." AR 610. He cited Ms. Lamont's ability to help her disabled son, tend to her personal care, prepare meals, care for the home, clean, sew, shop, iron, and do laundry, and to pursue hobbies like walking, cooking, making bracelets, reading, watching television, and listening to music. AR 610. To the extent the ALJ relied on this reasoning to discredit Ms. Lamont's migraine testimony, the ALJ erred. Daily activities can support an adverse credibility determination if they "meet the threshold for transferable work skills" or contradict the claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). But a claimant need not be "utterly incapacitated" to be disabled, and "many home activities may not be easily transferable to a work environment." *Smolen*, 80 F.3d at 1284 n.7; *see Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). Moreover, the activities about which Lamont testified are not inconsistent with the sporadic nature of her alleged migraines. *See Blau v. Astrue*, 263 F. App'x 635, 637 (9th Cir. 2008) (noting that claimant's ability to perform activities like driving, paying bills, doing taxes, shopping, doing laundry, and successfully completing real estate school were "generally consistent with the sporadic nature of CFS" as none consumed a substantial part of her day or required extended periods of concentration). Without further explanation or specific findings, the ALJ cannot rely on the blanket statement that Ms. Lamont's activities "are inconsistent with

REPORT AND RECOMMENDATION - 12

disability" to discredit her testimony that migraines impaired her for two to seven days per month and medication often failed to alleviate them. AR 610.

Because the ALJ erred in evaluating the evidence in the record concerning Ms. Lamont's migraine headaches, the ALJ's RFC assessment does not necessarily completely and accurately describe all of Ms. Lamont's functional capabilities. Accordingly, on remand the ALJ should reevaluate Ms. Lamont's testimony about her migraines and, if the ALJ discredits it, provide specific, cogent, and supported reasons to for doing so. The ALJ should then reassess Ms. Lamont's RFC and her ability to perform other work.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ improperly determined Ms. Lamont to be not disabled, and therefore that it reverse the ALJ's decision and remand this matter for further administrative proceedings.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **July 14, 2017**, as noted in the caption.

Dated this 28th day of June, 2017.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13

REPORT AND RECOMMENDATION - 14